Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,814-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
B.W.

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 4049

Honorable Jimmie C. Peters, Judge (*Ad Hoc*)

* * * * *

| | |
|---|---|
| WINN PARISH PUBLIC DEFENDER<br>By: James Earl Calhoun | Counsel for Appellant,<br>B.T., Father |
| R. CHRISTOPHER NEVILS<br>District Attorney | Counsel for Appellee,<br>State of Louisiana |
| MATTHEW S. KELLEY<br>Assistant District Attorney | |
| PUBLIC DEFENDERS OFFICE<br>By: Jonathan R. McDow | Counsel for Appellee,<br>A.W., Mother |
| LEGAL SERVICES OF NORTH LOUISIANA<br>By: Jacqueline C. Williams | Counsel for Appellee,<br>B.W., Minor Child |

* * * * *

Before STONE, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

BW, a child less than a year old, was removed from his mother, Alyssa Whatley ("Alyssa"), and adjudicated a child in need of care. BW's father, Benjamin Tripplett ("Benjamin"), whose role in BW's life appears to have been minimal, appeals the adjudication. We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 8, 2023, the Louisiana Department of Children and Family Services ("DCFS") received a complaint concerning the health and safety of BW. The complaint alleged Alyssa appeared in criminal court that day but was unable to stay awake, so the trial court ordered her to submit to a drug test which returned positive for benzodiazepines, cocaine, THC, and opiates. Alyssa was given the option to enter into a substance abuse program in lieu of serving jail time, which she initially agreed to but later refused. DCFS investigator Ivori Speed contacted Alyssa, who admitted she took Percocet earlier that day and frequently used methamphetamine. She also told Speed she dropped BW off with her sister before attending court. While interviewing Alyssa, Speed stated Alyssa was unable to form a complete sentence and was drooling from her mouth. Based on these conversations and observations, Speed concluded Alyssa could not care for BW in her current condition. Speed then contacted Alyssa's sister, who informed Speed she was unable to care for BW long term, resulting in DCFS making the decision to remove BW.

Following a continued custody hearing on August 9, the trial court ordered that BW remain in the custody of DCFS, that the alleged father, Benjamin, submit to paternity testing, and that DCFS assess whether

Benjamin's mother, Kimberly Tripplett ("Kimberly"), could be a potential caregiver. On August 14, a petition to adjudicate BW a child in need of care was filed by the state. Benjamin, who was determined by the paternity test to be the father, filed a motion to dismiss claiming there were insufficient allegations in the petition to show BW was a child in need of care. The state filed an amended petition alleging BW was in immediate danger due to the lack of supervision and neglect caused by Alyssa and the unavailability of a family member to provide care for him. Pursuant to a trial court order, the state amended its petition again asserting three additional allegations: (1) BW lacks a legal father, (2) Benjamin has not established filiation to BW, and (3) Benjamin uses illegal drugs.

On November 15, the trial court adjudicated BW a child in need of care, specifically finding both Alyssa and Benjamin were not fit to raise a child and each had significant drug problems. The record shows Benjamin had minimal involvement in BW's life prior to the state's removing the child from Alyssa. It appears BW spent most days with his paternal grandmother, Kimberly. At the conclusion of the hearing, BW's counsel made an oral motion to change placement of BW from foster care to BW's grandmother, Kimberly. The trial court directed counsel to file the motion in writing and informed the parties a hearing date would be set after the motion was filed. Following the child in need of care hearing, Benjamin filed an appeal challenging the adjudication of BW.

After the appeal was filed, a hearing was held on the motion to modify placement on December 6, at which time Kimberly was granted guardianship of BW after the trial court found she was capable of caring for BW as she had been doing so since BW was born.

**DISCUSSION**

Benjamin argues there was insufficient evidence submitted by the state to declare BW a child in need of care pursuant to the factors found in La. Ch. C. art. 606. The state claims the trial court's decision to grant Kimberly guardianship after Benjamin filed for appeal renders the appeal moot. However, in advancing this argument, the state relies on language from the dissent in *George v. Dugas*, 16-0710 (La. 11/7/16), 203 So. 3d 1043, and claims the granting of guardianship terminates a child in need of care proceeding. We recognize guardianship is a dispositional alternative under La. Ch. C. art. 681 and is considered a permanent placement, *State in Int. of K.P.*, 51,853 (La. App. 2 Cir. 11/15/17), 246 So. 3d 627; however, we find nothing to suggest the granting of guardianship precludes this Court from reviewing a prior adjudication of a child in need of care. Nevertheless, because Benjamin does not challenge the guardianship decision, we will not extend our review to the trial court's guardianship determination. We do wish to note, though, in light of the record before us and the circumstances surrounding BW's parents, the award of guardianship to Kimberly, who cared for BW daily since birth, does not appear to be manifestly erroneous.

In response to Benjamin's sole assignment of error, the state argues it met its burden of proving BW a child in need of care based on four main factors: (1) the factual allegations demonstrating BW was a child in need of care were well established in the second amended petition, (2) Speed concluded Alyssa was incapable of taking care of a child in the condition which she observed Alyssa, (3) the evidence of Benjamin's drug use and recent stint in rehab, and (4) testimony showed Kimberly had been serving as the primary caregiver of BW.

The law regarding child in need of care proceedings is well settled. La. Ch. C. art. 606 provides the grounds by which a child can be adjudicated a child in need of care. The factors applicable to this case are:

A. Allegations that a child is in need of care shall assert one or more of the following grounds: * * *

(2) The child is a victim of neglect.

(3) The child is without necessary food, clothing, shelter, medical care, or supervision because of the disappearance or prolonged absence of his parent or when, for any other reason, the child is placed at substantial risk of imminent harm because of the continuing absence of the parent. * * *

Adjudication of a child in need of care is warranted when a parent shows a repeated pattern of placing a child at risk. *State ex rel. L.M.*, 46,078 (La. App. 2 Cir. 1/26/11) 57 So. 3d 518; *State in Int. of A.A.*, 52,388 (La. App. 2 Cir. 11/14/18), 261 So. 3d 124, *writ denied*, 18-2060 (La. 1/28/19). At the adjudication hearing, the state bears the burden of proving by a preponderance of the evidence that the child is a child in need of care. La. Ch. C. art. 665; *State ex rel. L.B.*, 08-1539 (La. 7/17/08), 986 So. 2d 62. It is not the duty of the state to prove its case beyond a reasonable doubt, by clear and convincing evidence, or to disprove every hypothesis of innocence. *State ex rel. L.M.*, *supra; State in Int. of A.A.*, *supra*. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *In re A.J.F.*, 00-0948 (La. 6/30/00), 764 So. 2d 47; *State ex rel. L.M.*, *supra*. In a manifest error review, it is important that the appellate court not substitute its own opinion when it is the trial court that is in the unique position to see and hear the witnesses as they testify. *Id.* Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should

4

not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. *Id.* If the trial court's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *State ex rel. L.M.*, *supra; State in Int. of A.A.*, *supra.*

After a thorough review of this record, we do not find the trial court's adjudicating BW a child in need of care rises to a level of manifest error. The record shows the state proved BW a child in need of care by a preponderance of the evidence by documenting BW was without necessary supervision because of the condition of his mother. At the adjudication hearing, the evidence established both of BW's parents had significant drug problems and were not fit to care for BW; additionally BW was primarily being cared for by his grandmother, and his mother was facing incarceration for her appearance in criminal court while under the influence of drugs. Most importantly, the state's investigator interviewed and observed BW's mother before ultimately concluding she was in no condition to care for BW. The state also showed BW was being cared for on the day of his removal by his aunt, who admitted she could not care for him long term. As stated by this Court in *State ex rel. L.M.*, *supra,* and *State in Int. of A.A.*, *supra*, the state did not have to prove BW was a child in need of care by clear and convincing evidence or beyond a reasonable doubt, just by a preponderance of the evidence. We find it has done so here and there is no evidence to warrant setting aside the trial court's finding BW was a child in need of care.

This assignment of error lacks merit.

5

Though not an assignment of error, the state also claims Benjamin has no right to challenge the adjudication because he has not taken the necessary steps to establish paternal filiation of BW. However, La. Ch. C. art. 700(C) provides any person directly affected by the court's finding at the conclusion of the case review hearing may appeal the findings or orders of the court. With this article in mind, and with a paternity test conclusively showing Benjamin is BW's father, we find no reason to prevent him from challenging the adjudication of BW.

## CONCLUSION

For the reasons expressed, the judgment declaring BW a child in need of care is affirmed. All costs are assessed to Benjamin Tripplett to the extent allowed by La. C.C.P. art. 5188.

**AFFIRMED**.